## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

KEITH USEA                                           CIVIL ACTION

VERSUS                                               NO. 19-14704

AARON MANUEL ET AL.                                  SECTION: H(3)

## ORDER AND REASONS

Before the Court is Defendants Aaron Manuel and Sheriff Craig Webre's Motion for Summary Judgment (Doc. 61). For the following reasons, this Motion is **GRANTED**.

## BACKGROUND

This case arises out of the arrest of a high school student suspected of planning and threatening a school shooting. At the time of his arrest, February 20, 2018, Plaintiff Keith Usea was a senior at Thibodeaux High School in Lafourche Parish, Louisiana. Defendant Aaron Manuel, a detective with the Lafourche Parish Sheriff's Office, arrested Plaintiff for terrorizing and simple assault in violation of Louisiana Revised Statutes §§ 14:40.1 and 14:38, respectively. The criminal charges were eventually dismissed after a bench

trial, but not before Plaintiff spent two weeks in jail, months on house arrest, and was unable to graduate from high school.

Plaintiff presents—or at least does not dispute—the circumstances leading up to his arrest as follows. Plaintiff alleges that he has autism and suffers from mental illness and learning disabilities. While in high school, Plaintiff was bullied by many of his classmates. At some point in 2017, Plaintiff made a list of names of people whom he admitted he wanted to kill. Once word got out to certain students about Plaintiff's list and his rationale for making it, Plaintiff threw the list away.

On the morning of February 19, 2018, Plaintiff approached a group of students at a lunch table and stared at them. Accounts diverge as to the exact conversation that ensued, but what is undisputed is that when one of the students, K.P., questioned Plaintiff, he responded, "I could kill you right now if I wanted to."[1] Plaintiff also told K.P. and another student—both of whom had heard of Plaintiff's homicidal list before—that they were now "on the list."[2] After this exchange, one of the students involved reported the conversation to another student, who brought the information to the assistant principal. She alerted Deputy Kevin Brooks, the school's Resource Officer, who spoke with Plaintiff and confirmed that he did in fact make and keep a list of names at some point. After this conversation, at around 3:00 pm, Plaintiff was

---

[1] *See* Doc. 1, ¶ 24; Doc. 69-1 at 2 (admitting to Defendants' ninth alleged uncontested fact, the details of the conversation on the morning of February 19, 2018).
[2] *See* Doc. 1, ¶ 27.

transported to the Criminal Operations Center in Lockport, Louisiana for questioning by Detectives Manuel and Elizabeth Leon.

During the interrogation of Plaintiff, he admitted to creating a list of people he wanted to kill.[3] Plaintiff discussed with the detectives his idea of bringing a shotgun to school to shoot two students who had been bullying him and how he had been deterred from this by the cameras at school.[4] Plaintiff also presented his perspective of the incident at the lunch table from that morning. Although Plaintiff explained what he said to K.P. a few different times, one of his characterizations of his statement was, "I said like, if you don't – if you don't stop, there will be a shooting here, and you will be one of those people getting the – getting the bullet."[5]

Before interviewing Plaintiff, Detective Manuel spoke with K.P. He told Detective Manuel that he had heard from other students that Plaintiff had mentioned shooting up the school in the past and that Plaintiff kept a list of names of people he wanted to kill.[6] K.P. conveyed to the detectives the threatening statement that Plaintiff communicated to him that morning, as well as the message that K.P. and his friend had "made the list."[7] K.P. explained that he was afraid that Plaintiff would harm him and his friends,

_____

[3] *See* Doc. 69-1 at 2 (admitting to Defendants' twelfth alleged uncontested fact, Plaintiff's admission that he created a list of students he wanted to kill).
[4] *See* Doc. 61-3 at 15–16.
[5] *See id.* at 18.
[6] *See id.* at 9–10.
[7] *See id.* at 9.

though Plaintiff notes that K.P. did not do anything to alert the school after the incident that morning.[8]

After these interrogations, Detective Manuel executed an affidavit for an arrest warrant that included some of the details of his investigation. On February 20, 2018, and based on said affidavit, Judge Christopher Boudreaux signed the arrest warrant charging Plaintiff with terrorizing and simple assault. Plaintiff was arrested and subsequently taken to a hospital for a mental evaluation. Once discharged, Plaintiff was held in custody until March 12, when he was released on house arrest. A few days earlier, Judge F. Hugh Larose held a preliminary examination hearing, determined that there was probable cause for Plaintiff's arrest, and reduced Plaintiff's bond. On July 22, 2019, after a bench trial, Judge Boudreaux granted Plaintiff's motion for acquittal as to the charge of terrorizing, and the State entered a nolle prosequi as to the simple assault charge.

Plaintiff subsequently filed the instant action against Detective Manuel and Craig Webre, sheriff of Lafourche Parish. Suing under 42 U.S.C. § 1983, Plaintiff alleges that Detective Manuel violated his Fourth Amendment rights by arresting him without probable cause. More specifically, Plaintiff contends that Detective Manuel's affidavit contained a misstatement and several omissions of material facts that vitiate probable cause. Plaintiff also brings state law claims of malicious prosecution and false imprisonment against Manuel individually and Sheriff Webre vicariously.

---

[8] *See id.* at 11.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[9] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[10]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor.[11] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[12] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[13] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-

---

[9] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[10] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[11] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[12] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[13] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

movant would bear the burden of proof at trial."[14] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[15] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[16]

## <u>LAW AND ANALYSIS</u>

Defendants move for summary judgment as to all three of Plaintiff's claims in this action: (1) a Fourth Amendment violation actionable under § 1983; (2) malicious prosecution under Louisiana law; and (3) false imprisonment, also under state law. The Court will analyze each claim in turn.

## I.   **Fourth Amendment *Franks* Violation**

Plaintiff argues that Detective Manuel violated his Fourth Amendment rights by arresting him pursuant to a warrant premised on an affidavit containing a material misstatement and omissions of fact.[17]

> Since *Franks v. Delaware*, it has been clearly established that a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes "a false statement knowingly and intentionally, or with reckless disregard for the

---

[14] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[15] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[16] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[17] *See* Terwilliger v. Reyna, 4 F.4th 270, 281 (5th Cir. 2021) ("Liability under *Franks* can arise from either material misstatements or material omissions in warrant affidavits.").

truth" and (2) "the allegedly false statement is necessary to the finding of probable cause."[18]

"Functionally, the holding of *Franks* is an exception to the independent intermediary doctrine, which provides that 'if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party.'"[19] "However, the chain of causation remains intact if 'it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant.'"[20]

"To determine taint, the essential inquiry is whether 'there remains sufficient content in the warrant affidavit to support a finding of probable cause' *after* the 'material that is the subject of the alleged falsity or reckless disregard is set to one side.'"[21]

> To determine whether the false statement was necessary for [probable cause], *Franks* requires [courts] to consider the faulty affidavit as if those errors and omissions were removed. [Courts] then must examine the "corrected affidavit" and determine whether probable cause for the issuance of the warrant survives the deleted false statements and material omissions.[22]

---

[18] Winfrey v. Rogers, 901 F.3d 483, 494 (citation omitted) (quoting Franks v. Delaware, 438 U.S. 154, 155–56 (1978)). "The *Franks* case arose in the context of a search warrant, but its rationale extends to arrest warrants." *Terwilliger*, 4 F.4th at 282.

[19] *Terwilliger*, 4 F.4th at 281 (quoting Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 813 (5th Cir. 2010) (citation and internal quotation marks omitted)).

[20] *Cuadra*, 626 F.3d at 813 (quoting Hand v. Gary, 838 F.2d 1420, 1428 (5th Cir. 1988)).

[21] *Terwilliger*, 4 F.4th at 281–82 (quoting *Franks*, 438 U.S. at 171–72).

[22] *Winfrey*, 901 F.3d at 494–95 (alterations added) (citing *Franks*, 438 U.S. at 156; United States v. Bankston, 182 F.3d 296, 305–06 (5th Cir. 1999)).

Plaintiff argues that a corrected affidavit in this case would lack probable cause to support an arrest warrant charging him with terrorizing.[23] Under Louisiana law, terrorizing is:

> the intentional communication of information that the commission of a crime of violence is imminent or in progress or that a circumstance dangerous to human life exists or is about to exist, with the intent of causing members of the general public to be in sustained fear for their safety; or causing evacuation of a building, a public structure, or a facility of transportation; or causing other serious disruption to the general public.[24]

In support of his argument, Plaintiff cites an outdated version of the terrorizing statute, one that requires the suspect to *cause* sustained fear, evacuation, or other serious disruption, rather than simply *intend* to cause such effects, as the law stands now and stood at the time of Plaintiff's arrest.[25] Drawing on the outdated statute, Plaintiff argues that the corrected affidavit would reflect that Plaintiff did not cause any of those effects, thereby failing to support probable cause for the warrant.

Focusing on the proper statutory definition, and assuming arguendo that Detective Manuel intentionally or recklessly included material omissions in his affidavit for the arrest warrant, the Court finds that a corrected affidavit

---

[23] *See* Doc. 69 at 15–20.

[24] La. Rev. Stat. § 14:40.1(A).

[25] *See* Doc. 69 at 15 ("Terrorizing is the intentional communication of information, known by the offender to be false, that the commission of a crime of violence is imminent or in progress or that a circumstance dangerous to human life exists or is about to exist, *thereby causing* any person to be in sustained fear for his or another person's safety; causing evacuation of a building, a public structure, or a facility of transportation; or causing other serious disruption to the public.") (emphasis added); *see also* H.B. 1944, 2001 Legis., Reg. Sess. (La. 2001).

would still have reflected sufficient probable cause to support Plaintiff's arrest for terrorizing.[26]

"Probable cause exists when all of the facts known by a police officer 'are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense.'"[27] Courts must examine the totality of the circumstances to decide "whether there is a fair probability that a crime occurred."[28] A "requisite 'fair probability' is something more than a bare suspicion, but need not reach the fifty percent mark."[29] Importantly, "evidence that the arrestee was innocent of the crime is not necessarily dispositive of whether the officer had probable cause to conduct the arrest because 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'"[30]

None of the alleged omissions in Detective Manuel's affidavit are sufficient to eradicate probable cause on their own or in the aggregate. The first omission according to Plaintiff is that Detective Manuel did not include all of Plaintiff's various descriptions of what was said at the lunch table,

---

[26] The Court deliberately refers to omissions alone, rather than omissions *and* misstatements. Even accepting Plaintiff's version of events, the Court cannot see how Detective Manuel misstated anything when Plaintiff said he made the statement that the detective included in the affidavit. Detective Manuel's failure to include other statements or descriptions thereof that Plaintiff finds relevant is an omission, not a misstatement. Accordingly, the Court will refer to alleged omissions only.

[27] Villarreal v. City of Laredo, 17 F.4th 532, 543 (5th Cir. 2021) (quoting Texas v. Kleinert, 855 F.3d 305, 316 (5th Cir. 2017)).

[28] United States v. Garcia, 179 F.3d 265, 269 (5th Cir. 1999) (citations omitted).

[29] *Id.*

[30] Deville v. Marcantel, 567 F.3d 156, 165 (5th Cir. 2009) (quoting Illinois v. Gates, 462 U.S. 213, 244 n.13 (1983)).

instead opting for the most incriminating, most alarming version. It is undisputed, however, that Plaintiff admitted to saying to K.P. that "you will be one of those people . . . getting the bullet," and his other characterizations do not contradict that statement so much as rephrase it in more or less general terms.[31] The next omission is any reference to Plaintiff's answers exhibiting symptoms of his underlying mental illness, instability, or autism. But Plaintiff fails to provide—and the Court fails to see—any justification for why that information would diminish probable cause. Lastly, Plaintiff notes that the affidavit fails to mention the lack of evidence produced by a search of his backpack and phone. However, Plaintiff never claimed to have physical evidence on his phone or in his backpack, so the results of this search did not contradict any of his statements.[32] Further, the elements of the crime of terrorizing do not require possession of any specific physical evidence such as a firearm.[33]

Even after ameliorating these alleged omissions, the corrected affidavit would have still included the following facts: (1) Plaintiff admitted to making a list of students he wanted to kill; (2) other students knew of the list and Plaintiff's homicidal intention behind it; (3) Plaintiff told one of those students, "I could kill you right now if I wanted to" and that he and another student had "made the list"; (4) Plaintiff said he told one of those same students that he

---

[31] Doc. 61-3 at 18.

[32] *See Winfrey*, 901 F.3d at 495–96 (including in the corrected affidavit a note to the judge that the physical evidence contradicted the informant's statement).

[33] By analogy, calling in a bomb threat is a quintessential act of terrorizing though no bomb is present.

would "be one of those people getting the -- getting the bullet"; and (5) Plaintiff admitted to being deterred from carrying out his idea of bringing a shotgun to school by the cameras on campus.

The Court finds that these facts are sufficient to support a finding of probable cause as to terrorizing.[34] Detective Manuel had evidence from Plaintiff himself of an "intentional communication" to K.P. and others that "a crime of violence is imminent." And given Plaintiff's testimony as to his intent behind creating the list of names and as to his plan to bring a shotgun to school but for the cameras, Detective Manuel had more than a "bare suspicion" that Plaintiff made his communication with the intent to cause "sustained fear" or "serious disruption" to students and others.[35] Therefore, Judge Boudreaux's decision to issue the warrant was not tainted, meaning the independent intermediary doctrine applies. Detective Manuel is entitled to summary judgment as to Plaintiff's *Franks* claim.

To overcome qualified immunity, Plaintiff must demonstrate "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."[36] Because this

---

[34] In addition to terrorizing, there was probable cause for simple assault. "Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." District of Columbia v. Wesby, 138 S. Ct. 577, 585 n.2 (2018); *see also* Doc. 61-1 at 12 (citing *Wesby*). Assault is "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery," and simple assault is assault committed without a dangerous weapon. LA. REV. STAT. §§ 14:36, :38.

[35] *See Garcia¸*179 F.3d at 269 ("In short, the requisite 'fair probability' [for probable cause] is something more than a bare suspicion, but need not reach the fifty percent mark.") (alteration added).

[36] Craig v. Martin, 26 F.4th 699, 704 (5th Cir. 2022) (citations omitted).

Court finds that there was sufficient probable cause for Plaintiff's arrest and that there was no *Franks* violation, Plaintiff cannot demonstrate a constitutional violation. Accordingly, Detective Manuel is entitled to qualified immunity, and summary judgment is appropriate.

## II.   Malicious Prosecution

A claim for malicious prosecution requires a plaintiff to prove:

(1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff.[37]

The Court's above disposition of Plaintiff's *Franks* claim necessarily precludes his malicious prosecution claim. The Court has determined that Detective Manuel had probable cause to arrest Plaintiff for terrorizing and that any alleged omissions in the warrant affidavit did not nullify probable cause. Thus, insofar as Plaintiff must show an absence of probable cause to prove malicious prosecution, his claim is foreclosed.[38] Accordingly, summary judgment of this claim in favor of both Defendants is appropriate. Sheriff Webre cannot be vicariously liable for someone who is not individually liable.

## III.   False Imprisonment

---

[37] Lemoine v. Wolfe, 167 So. 3d 362, 367 (La. 2015) (quoting Jones v. Soileau, 448 So. 2d 1268, 1271 (La. 1984)).
[38] *See* Danna v. Purgerson, 760 F. App'x 275, 280 (5th Cir. 2019) ("Here again, the presence of probable cause to charge Danna with theft dooms her [malicious prosecution] claim.") (alteration added).

Under Louisiana law, "[f]alse arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority."[39] "The two essential elements are: (1) detention of a person; and (2) the unlawfulness of such detention."[40] Under Louisiana law, "[i]f a person is arrested pursuant to a valid warrant, there is no false arrest and no false imprisonment."[41] Plaintiff's false imprisonment claim must meet a similar fate as his others. Because the Court finds that Plaintiff was arrested pursuant to a valid, untainted warrant supporting probable cause, his claim for false imprisonment fails.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 61) is **GRANTED**.

**IT IS FURTHER ORDERED** that all of Plaintiffs' claims against Detective Manuel and Sheriff Webre are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 6th day of July, 2022.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[39] Kyle v. City of New Orleans, 353 So. 2d 969, 971 (La. 1977).
[40] Barry v. Dennis, 633 So. 2d 806, 808 (La. App. 4 Cir. 1994).
[41] Jenkins v. Baldwin, 801 So. 2d 485, 496 (La. App. 4 Cir. 2001).